UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARILYN D. JOHNSON,                        Case No. 18-13571

      Plaintiff,                        Stephanie Dawkins Davis
v.                                         United States District Judge

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

**OPINION AND ORDER**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 25, 26)**

## I.  PROCEDURAL HISTORY

### A.  Proceedings in this Court

On November 16, 2018, plaintiff Marilyn D. Johnson filed the instant suit

seeking judicial review of the Commissioner's unfavorable decision disallowing

benefits.  (ECF No. 1).  This matter is before the Court on cross-motions for

summary judgment.  (ECF Nos. 25, 26).

### B.  Administrative Proceedings

Johnson filed her fifth application for a period of disability and disability

insurance benefits and her fourth application for SSI on July 13, 2015,  alleging

1

disability beginning June 13, 2013.  (Tr. 15).[1]  The claims were initially

disapproved by the Commissioner on September 16, 2015.  *Id*.  Johnson requested

a hearing, and on June 17, 2017, she appeared with a non-attorney representative

before Administrative Law Judge ("ALJ") Gregory Holiday, who considered the

case de novo.  (Tr. 35-63).  In a decision dated September 20, 2017, the ALJ found

that Johnson was not disabled.  (Tr. 12-30).  Johnson requested a review of this

decision, and the ALJ's decision became the final decision of the Commissioner

when the Appeals Council, on April 6, 2018, denied her request for review.  (Tr. 1-

6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

## II.    FACTUAL BACKGROUND

Johnson, born in 1973, was 39 years old on the alleged disability onset date.

(Tr. 29).  Johnson has a high school diploma and lives alone.  (Tr. 305, 451).  She

has past relevant work as a mail clerk, childcare provider, and customer service

representative.  (Tr. 28).  Johnson stopped working on December 5, 2011, because

of severe osteoarthritis with proximal tibial fracture, lumbar disc disease,

adjustment disorder/depression/mood disorder, hypertension, thyroid disease,

ganglion cyst, arthritis of the lower back and extremities.  (Tr. 304).

---

[1] The Administrative Record appears on the docket at entry number 23.  All references to the same are identified as "Tr."

The ALJ applied the five-step disability analysis and found at step one that
Johnson had not engaged in substantial gainful activity since the alleged onset date
of June 13, 2013.  (Tr. 19).  At step two, the ALJ found that Johnson's status post
internal fixation and subsequent hardware removal of right knee, degenerative joint
disease, sciatica, and depression were "severe" impairments within the meaning of
the second sequential step.  *Id*.  The ALJ also found that Johnson's adjustment
disorder, foot neuropathy, and left-hand arthritis were nonsevere impairments.  *Id*.
However, at step three, the ALJ found no evidence that Johnson's impairments
singly or in combination met or medically equaled one of the listings in the
regulations.  (Tr. 19-20).

Thereafter, the ALJ assessed Johnson's residual functional capacity ("RFC")
as follows:

> After careful consideration of the entire record, I find that
> there has been a worsening of the claimant's condition
> since Judge Mason's decision and that the claimant has
> the residual functional capacity to perform sedentary
> work as defined in 20 CFR 404.1567(a) and 416.967(a)
> except that she must be permitted to alternate between
> sitting and standing, at will; cannot climb any ladders,
> ropes, or scaffolds; can only occasionally climb ramps or
> stairs; can only occasionally balance, stoop, crouch, or
> kneel; cannot crawl; must avoid hazards like unprotected
> heights, uneven surfaces, and operating and controlling
> moving machinery; limited to no more than occasional
> pushing or pulling with the upper extremities; must be
> employed in a "low-stress job," defined as a job that calls
> for no more than occasional decision-making, no more
> than occasional changes in the work setting; limited to

3

> simple, routine tasks; only occasional interaction with
> the public and with co-workers; and needs a job where
> [s]he could be off-task about 10% of a typical workday
> for health reasons.

(Tr. 21). At step four, the ALJ found Johnson was unable to perform her past

relevant work. (Tr. 28). At step five, the ALJ determined that there were

sufficient jobs in the national economy that Johnson could perform with her RFC

and therefore, she had not been under a disability from the alleged onset date

through the date of the decision. (Tr. 29-30).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.

1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (An "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely

upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (internal quotation marks omitted) (quoting *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis set forth at 20 C.F.R.

§§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the

claimant is engaged in significant gainful activity; (2) the claimant has any severe

impairment(s); (3) the claimant's impairments alone or in combination meet or

equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if

unable to perform past relevant work, whether there is work in the national

economy that the claimant can perform.  *Id.*  "If the Commissioner makes a

dispositive finding at any point in the five-step process, the review terminates."

*Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.   Analysis and Conclusions[2]

1.   Step three

At step three of the disability evaluation process, the Commissioner must consider whether a claimant's impairments meet or medically equal any of the relevant listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1; 20 C.F.R. § 404.1520(a).  An impairment that meets only some of the medical criteria, but not all does not qualify, despite its severity.  *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Conversely, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled and entitled to benefits.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Berry v. Comm'r of Soc. Sec.*, 34 Fed. Appx. 202, 203 (6th Cir. 2002).  The burden of proof for

---

[2] Johnson does not raise any claim of error based on *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933-34 (6th Cir. 2018), where the Sixth Circuit modified its holding in *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), which the ALJ applied here.  While *Earley* was decided after the ALJ issued his decision in this case, *Earley* has retroactive effect under *Chevron Oil v. Huson*, 404 U.S. 97 (1971).  Under *Chevron*, a new decision should be applied to pending cases "unless it represents a 'clear break' with the past and unless in addition it would be fundamentally unfair or otherwise burdensome to so apply it." *Casiano v. Heckler*, 746 F.2d 1144, 1146 (6th Cir. 1984) (quoting *Lawson v. Truck Drivers, Chauffers & Helpers, Local Union 100*, 698 F.2d 250, 254 (6th Cir.), cert. denied, 464 U.S. 814 (1983)).  As explained in *Al Jalham v. Comm'r of Soc. Sec.,* 2019 WL 7584406, at *6 (E.D. Mich. Aug. 26, 2019), report and recommendation adopted, 2019 WL 5558357 (E.D. Mich. Oct. 29, 2019), "*Earley* merely clarifies long-standing principles of res judicata as applied in administrative proceedings and that *Drummond* had been applied in an unduly broad fashion."  Here, the ALJ thoroughly discussed all the new evidence and adopted an RFC that was more restrictive than that formulated in the prior decision.  Accordingly, the ALJ gave the evidence a "fresh look" as required by *Earley* and fully considered all the new medical and other evidence of record.  Therefore, the ALJ's analysis does not run afoul of *Earley*.

establishing that an impairment meets or equals the requirements of a listed

impairment rests with the claimant.  *See Foster v. Halter*, 279 F.3d 348, 354 (6th

Cir. 2001).  An impairment or combination of impairments is considered medically

equivalent to a listed impairment ". . . if the symptoms, signs and laboratory

findings as shown in medical evidence are at least equal in severity and duration to

the listed impairments."  *See Land v. Sec'y of Health & Human Servs*., 814 F.2d

241, 245 (6th Cir. 1986) (per curiam).

> a.  *Listing 12.04*

Johnson argues that she satisfied the "B" criteria for Listing 12.04 because

she has an extreme limitation in the area of her activities of daily living.  Johnson's

argument that she satisfies the "B" criteria is based on her need for a home

aid/housekeeper for more than two and half years.  She testified that she requires

assistance with all her activities of daily living, including dressing, meal

preparation, laundry, shopping, and housekeeping.  Johnson also points to evidence

that she has attended therapy regularly since June 2014 and that her diagnosis was

recently updated to major depression recurrent-moderate.  Johnson says she

satisfies the "C" criteria because her mental impairment is serious and persistent;

it is well-documented over a period of at least two years.  She also says that  there

is evidence of continuous treatment, her need for a highly structured setting, and

she has minimal capacity to adapt to changes in her environment or demands that

are not part of her daily life.

To meet Listings 12.04, a claimant must demonstrate either:

B.    Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    1.    Understand, remember, or apply information.

    2.    Interact with others.

    3.    Concentrate, persist, or maintain pace.

    4.    Adapt or manage oneself.

OR

C.    Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

    1.    Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and

    2.    Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 CFR Part 404, Subpart P, Appendix 1.  Here, the ALJ determined that

Johnson's mental impairments did not meet the "paragraph B" criteria because she

had only moderate limitations in her ability to understand, remember, or apply

information and adapt and manage oneself,  moderate limitations in her ability to

interact with others, concentrate, persist, or maintain pace and mild limitations in

adapting and managing oneself because she lived alone.  (Tr. 20).  The ALJ also

concluded that the evidence of record failed to establish the presence of the

"paragraph C" criteria.  *Id*.

The court agrees with the Commissioner that Johnson misapprehends the

requirements of Listing 12.04.  While she may require a home aide/housekeeper,

she points to no evidence suggesting that this need is based on her mental

impairments.  The explanation provided by the State of Michigan – who pays for

this service – is focused on Johnson's pain and her physical conditions and did not

address any mental impairments or limitations caused by such impairments.  (Tr.

435-443).  Similarly, the "medical needs" statement completed by Dr. Sitner

(Johnson's treating physician) for the State of Michigan cited only her physical

impairments.  (Tr. 527).  Johnson does not adduce any evidence in the record

suggesting that she was receiving such services based on her mental impairment.

Accordingly, she cannot show that the ALJ erred in not finding an extreme

limitation in this regard.

The "C" criteria are similarly based on a claimant's mental impairments and

resulting limitations.  To the extent Johnson relies on her need for a home

aide/housekeeper as evidence that she requires a highly structured setting, again, she does not reference any evidence suggesting that she receives such assistance because of her mental limitations.  Further, while Johnson highlights the change in her depression diagnosis – apparently suggesting a worsening in her condition – along with her regular therapy sessions over the course of two plus years, this evidence is insufficient to show how her mental impairment limits her in such a way to satisfy the "C" criteria because it does establish any functional limitations. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citation omitted) ("mere diagnosis of arthritis . . . says nothing about the severity of the condition"); *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").  Consequently, the court finds no basis to disturb the ALJ's analysis of the "C" criteria.

> b.  *Listing 1.04.*

Listing 1.04, disorders of the spine, has three subparts: A, B, and C. Johnson contends that she satisfies subparagraph C, which provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> * * *

> C.   Lumbar spinal stenosis resulting in
> pseudoclaudication, established by findings
> on appropriate medically acceptable
> imaging, manifested by chronic nonradicular
> pain and weakness, and resulting in inability
> to ambulate effectively, as defined in
> 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1.  Section 1.00(B)(2)(b) defines the inability to

ambulate effectively as an "extreme limitation of the ability to walk" that interferes

"very seriously" with the claimant's ability to independently engage in activities.

Ineffective ambulation is defined as having insufficient lower extremity

functioning to permit independent ambulation without the use of a hand-held

assistive device that limits the functioning of *both* upper extremities.  *Id*.  While

Johnson claims that she cannot walk without using a cane, and there is evidence

that she limps and uses a brace, she does not cite any evidence in the record

indicating that her use of a cane limits the functioning of both of her upper

extremities.  Accordingly, Johnson does not satisfy this provision.

Listing 1.00B2b(2) also provides that "ineffective ambulation" may include

"the inability to walk a block at a reasonable pace on rough or uneven surfaces, the

inability to use standard public transportation, the inability to carry out routine

ambulatory activities, such as shopping and banking, and the inability to climb a

few steps at a reasonable pace with the use of a single hand rail."  The record

shows that Johnson was often observed walking with a normal gait or a slight limp,

without the use of an assistive device.  (Tr. 445, 471, 514, 532).  Again, while she

was prescribed a cane, the examiners repeatedly noted that she walked normally,

which contradicts her claim that that she was unable to ambulate effectively.

Johnson has not come forward with sufficient evidence to suggest that the ALJ's

assessment of Listing 1.04C is unsupported by substantial evidence.  Accordingly,

the court finds no reversable error.

### 2.    Assessment of subjective symptoms

Johnson next argues that the ALJ improperly evaluated her complaints of

pain.  She maintains that her subjective pain complaints and allegations that such

pain disables her are corroborated by the medical evidence.  The Commissioner

contends, in response, that the ALJ properly credited the limiting effects of

Johnson's pain by limited her to reduced range of sedentary work with several

restrictions to account for her reported mental impairments and difficulties with

standing and walking.  The Commissioner contends that the ALJ reasonably

concluded Johnson's allegations of debilitating limitations were inconsistent with

the examination findings, conservative treatment, and medical opinion evidence.

"A claimant's testimony may be discounted if it is contradicted by the

medical reports and other evidence in the record."  *Harley v. Comm'r of Soc. Sec.*,

485 Fed. Appx. 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c).  In assessing a

claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus

on the consistency of the complaints with the other evidence in the record.

*Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30,

2017).  The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the

use of the term credibility ... to clarify that subjective symptom evaluation is not an

examination of an individual's character.'"  *Dooley v. Comm'r of Soc. Sec.*, 656

Fed. Appx. 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks

omitted); Soc. Sec. Ruling 16-3p; 2016 WL 1119029, *1 (S.S.A. Mar. 16, 2016).

"SSR 16-3p instructs ALJs in accordance with the applicable regulations to

consider all of the evidence in the record in evaluating the intensity and persistence

of symptoms after finding the claimant has a medically determinable

impairment."  *Coffey v. Comm'r of Soc. Sec.*, 2017 WL 3528952, at *8 n. 4 (E.D.

Tenn. Aug. 16, 2017).  As to a claimant's subjective symptoms, the regulations

require an ALJ to consider several factors, including: (1) daily activities; (2)

location, duration, frequency, and intensity of pain or other symptoms; (3)

precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

effects of any medication taken; (5) treatment, other than medication, to relieve

pain or other symptoms; (6) any measures used to relieve pain or other symptoms;

and (7) other factors concerning functional limitations and restrictions due to pain

or other symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029,

*7 ("In addition to using all of the evidence to evaluate the intensity, persistence,

and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3).").

The ALJ's conclusion that Johnson's statements regarding the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical and other evidence in the record is supported by substantial evidence. For example, the ALJ observed that while Johnson said she required the use of cane at all times, she reported that she was not using a cane because of a ganglion cyst on her wrist.  (Tr. 445).  That same examiner reported that Johnson ambulated down a long hallway and sat comfortably in a chair.  *Id*.  During the February 2017 consultative examination, while she reported difficulty standing for long periods, she did not use a cane or brace during this visit.  (Tr. 513).  Moreover, repeated examinations shows normal gait, station, strength and sensation.  (Tr. 22, 24-26). The ALJ reasonably found this evidence inconsistent with Johnson's claim that she was unable to ambulate.

The fact that Dr. Leonard Rangel-Castulla referred Johnson for back surgery does not change this result.  While the need for surgery buttresses Johnson's claims that her symptoms were limiting, Dr. Rangel-Castulla did not provide any opinion regarding her functional limitations.  (Tr. 532-533).  He too noted that Johnson had a normal balance and gait but based on her MRI results showing a large disc herniation causing canal stenosis and symptoms of burning and shooting pain,

numbness and tingling, he recommended a left L5-S1 microdiscectomy.  *Id*.  The

ALJ discussed this evidence in his decision.  (Tr. 24).  In the court's view, because

of the lack of any functional limitations imposed by Dr. Rangel-Castulla, this

evidence does not significantly detract from the substantial evidence supporting the

ALJ's assessment of Johnson's subjective symptoms, which is entitled to

considerable deference.  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir.

2007); *Ritchie v. Comm'r of Soc. Sec.*, 540 Fed. Appx. 508, 511 (6th Cir. 2013)

(An ALJ's subjective symptom assessments are "virtually unchallengeable.")

(citation omitted).

Johnson briefly makes an argument that she has medication side effects that

"limit her ability to function normally."  (ECF No. 25, PageID.736).  However,

Johnson does not expound on this argument any further.  "[I]ssues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived.  It is not sufficient for a party to mention a possible argument

in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson*

*v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness*

*Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94

(1st Cir. 1995) (citation omitted)); *see also Emerson v. Novartis Pharm. Corp.*, 446

Fed. Appx. 733, 736 (6th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d

955, 956 (7th Cir. 1991) (per curiam) ("'Judges are not like pigs, hunting for

truffles' that might be buried in the record."). Given Johnson's failure to flesh out this argument, the court declines to consider it further.

> 3.     Opinion evidence

Johnson raises several points of error regarding the opinion evidence in the record. She says the ALJ did not properly assess the opinion of her treating physician, Vishal Nemarugommula, who opined that she could not work at her usual occupation or any job "for life" because of her severe osteoarthritis and fracture and noted that she required assistance with her activities of daily living. She next says that the ALJ failed to assign a weight to the February 2017 opinions of Dr. Shelby-Lane. Her treating physician, Dr. Jerome Sitner, also authored multiple statements of Medical Needs for the State of Michigan, in which he opined that Johnson could not work at her usual occupation or any job for the rest of her life because of lumbar disc disease, degenerative joint disease, hypothyroid and bipolar depression. He further noted that she required assistance with her activities of daily living. Johnson also faults the ALJ for not recognizing that Janet Matthews, who completed a psychiatric review technique form, is a DDS (Disability Determination Service) medical consultant and her opinions should be given controlling weight.

The court agrees with the ALJ and the Commissioner that the opinions of Drs. Nemarugommula and Sitner were conclusory opinions that Johnson was

disabled and did not include any functional limitations. The ALJ did not err in giving little weight to opinions that plaintiff was disabled or unable to work. Indeed, the regulations specifically exclude from consideration opinions on certain issues, such as conclusory statements that a claimant is disabled or unable to work. *See* 20 C.F.R. § 404.1527(d); *see also Dunlap v. Comm'r of Soc. Sec.*, 509 Fed. Appx. 472, 476 (6th Cir. 2012) (holding doctor's conclusion in single sentence note that "[i]n my medical opinion, [claimant] has severe low back pain and due to his pain is unable to work" did not constitute medical opinion and was properly reserved to the Commissioner.); *Cosma v. Comm'r of Soc. Sec.,* 652 Fed. Appx. 310, 311 (6th Cir. 2016) ("The ALJ reasonably gave no weight to [the doctor's] opinion because her conclusion that [the plaintiff] is totally disabled is a determination reserved to the Commissioner.").

As to the ALJ's assessment of Dr. Shelby-Lane's 2017 opinion, the court also finds no error. The ALJ gave some weight to the opinion of this consultative examiner but found Johnson even *more limited* than Dr. Shelby-Lane found. Accordingly, even if the ALJ had given controlling weight to Dr. Shelby-Lane's opinion, the ALJ's decision would not change in her favor. Thus, the court finds no error here.

Finally, the Commissioner disputes that Ms. Mathews is a psychiatric consultant because Agency records show that the opinion was submitted by

21

Johnson's representative.  Regardless, Johnson fails to explain how giving this opinion additional weight would change the outcome.  That is, any error is harmless.  More specifically, nothing in Ms. Mathews' opinion imposed additional functional limitations on Johnson.  (Tr. 518-525).  Rather, the opinion merely diagnosed Johnson with a depressive disorder.  *Id*.  To the extent that Ms. Mathews' diagnosis constitutes an opinion regarding Johnson's diagnosis, the ALJ accounted for her depressive disorder in his findings of her severe impairments.  *See* 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").  And where the Commissioner makes findings that are consistent with an acceptable medical source opinion, any error in the weight assigned to that opinion is harmless.  *Hargett v. Comm'r of Soc. Sec*., 964 F.3d 546, 554 (6th Cir. 2020) (Failure to give good reasons for the weight given to a treating source's opinion is harmless error where the Commissioner made "findings consistent with the [treating-source] opinion.") (quoting *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 547 (6th Cir. 2004)).  Accordingly, the court finds no error in the ALJ's treatment of this evidence.

    4.     State of Michigan disability decision

Johnson complains that the ALJ did not properly consider the decision from the State of Michigan ALJ, who found her to be disabled.  The Commissioner maintains that the ALJ reasonably declined to adopt the state agency findings because that decision contained no RFC other than concluding Johnson could not even perform sedentary work.  (Tr. 25, 441-443).  Importantly, findings of disability by other government agencies are not binding on the SSA.  *See* 20 C.F.R. § 404.1504 (findings of disability by other governmental agencies are not binding on SSA); *Turcus v. Soc. Sec. Admin.*, 110 Fed. Appx. 630, 632 (6th Cir. 2004) ("[A] decision by another government agency as to an individual's disability is not binding upon the Social Security Administration."); *Vanderpool v. Comm'r of Soc. Sec.*, 2013 WL 5450276, at *1 (E.D. Mich. Sept. 30, 2013) (ALJ's failure to consider a State finding of disability is harmless when the decision "presents only bare conclusions...").  As further clarified in SSR 06-03p, the Commissioner is "required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies."  Soc. Sec. Ruling 06-03p, 2006 WL 2263437.  Consequently, "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered."  *Id*.  Here, the ALJ did not ignore the state agency decision.  Rather, he discussed that decision at length.  (Tr. 25).  Accordingly, the ALJ in this case

complied with the requirements of SSR 06-03p by considering the decision as reflected in his decision. *See* SSR 06-03p, 2006 WL 2263437.

## IV.   CONCLUSION

For the reasons set forth above, the Court **DENIES** plaintiff's motion for summary judgment, **GRANTS** defendant's motion for summary judgment, and **AFFIRMS** the findings of the Commissioner.

**IT IS SO ORDERED**.

Date: November 25, 2020            <u>s/Stephanie Dawkins Davis</u>
                                   Stephanie Dawkins Davis
                                   United States District Judge